UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
COREY A. LATIMER, SR., :
              Plaintiff, :
   :
v. :
   :
DOCCS COMMISSIONER ANTHONY : **OPINION AND ORDER**
ANNUCCI; GREEN HAVEN :
CORRECTIONAL FACILITY SERGEANT : 21 CV 1275 (VB)
ROSITA ROSSY; GREEN HAVEN :
CORRECTIONAL FACILITY SERGEANT :
DAVID MAZELLA, each in their individual :
capacities, :
             Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Corey A. Latimer, Sr., proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner Anthony Annucci ("Commissioner Annucci"), Green Haven Correctional Facility ("Green Haven") Sergeant Rosita Rossy ("Sgt. Rossy"), and Green Haven Sergeant David Mazella ("Sgt. Mazella"), each in their individual capacities. Plaintiff alleges his constitutional rights were violated when Sgt. Rossy and Sgt. Mazella confiscated his face mask on April 14, 2020, during the COVID-19 pandemic.

    Now pending is defendants' motion for summary judgment. (Doc. #69). For the reasons set forth below, the motion is GRANTED.

    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

**BACKGROUND**

The parties have submitted memoranda of law and statements of undisputed material facts pursuant to Local Civil Rule 56.1, and the defendants have submitted declarations with exhibits, which together reflect the following factual background.[1]

Plaintiff was incarcerated at Green Haven in Stormville, New York during the complained-of events—all of which took place in 2020, when the COVID-19 pandemic had just begun.

By April 2020, more than one million cases had already been confirmed worldwide. (Doc. #74 ("Burns Decl."), Ex. C at ECF 10).[2]  As those numbers continued to grow, so did the demand for, and shortages of, personal protective equipment like gloves, eye shields, and masks—particularly in New York.  In April 2020, both the Centers for Disease Control and Prevention ("CDC") and the New York State Department of Health ("DOH") announced new guidance that advised wearing cloth face coverings to slow the spread of the virus.  (Id., Exs. A, D).  The guidance also advised that "[s]urgical masks and N-95 respirators are critical supplies

---

[1] Statements of undisputed material facts "will be deemed to be admitted for purposes of the motion unless specifically controverted by" the opposing party, and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(c)–(d).  If an opposing party does not "actually dispute" specific statements of material fact or provide a citation to admissible evidence in attempting to do so, the Court may find such statements undisputed.  Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600–01 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019) (summary order).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

2

that must continue to be reserved for healthcare workers and other first responders." (Id., Exs. A, D).

Based on this new guidance, Commissioner Annucci issued a memorandum dated April 9, 2020, informing all incarcerated individuals in DOCCS custody that they will be "issued three (3) handkerchiefs," and that "[e]ffective immediately, [they] may voluntarily choose to utilize the state-issued handkerchief as a cloth face covering during this public health crisis." (Burns Decl., Ex. E).

Plaintiff worked in Green Haven's medical unit as a mechanic, building machines used for physical therapy. According to plaintiff, at this time, only those working in that department had access to surgical masks, and a nurse gave him one, which plaintiff wore during the following two weeks as protection during the pandemic.

On April 14, 2020, Sgt. Rossy and Sgt. Mazella confiscated plaintiff's face mask in the mess hall, informing him incarcerated individuals were not permitted to wear this type of mask. Plaintiff claims he suffers from asthma and is over the age of fifty, which put him at a high risk of serious illness if he contracted COVID-19. (Burns Decl., Ex. J at 3–4; Doc. #82 ("Pl. Opp.") ¶ 5). Plaintiff surrendered his mask and returned to his cell.

Sgt. Mazella attested he told plaintiff the mask was not permitted to be worn because the surgical face mask did not comply with Commissioner Annucci's April 9, 2020, memorandum. (Burns Decl., Ex. H ¶¶ 7–8, 10). Sgt. Rossy believed the same to be true. (Id., Ex. G ¶¶ 4–5). Prior to confiscating it, Sgt. Mazella told plaintiff surgical face masks were not permitted to be worn outside the medical clinic. (Id., Ex. H ¶ 6).

Plaintiff was purportedly issued a new surgical face mask when he reported back for work at the medical clinic but could not wear it outside work. Plaintiff testified at his deposition

3

that he did not wear the mask outside of work, prisoners were only provided handkerchiefs when they entered DOCCS custody, the handkerchiefs provided by Green Haven were thin, and that prisoners were not provided replacement handkerchiefs for weeks after plaintiff's surgical mask was confiscated. (Doc. #83 ("Counter Statement to Defs.' 56.1 Statement") ¶ 37). As result, plaintiff spent a large part of his day outside of work maskless.

According to plaintiff, he filed a grievance challenging the confiscation and requesting a new mask. (Doc. #20 ("Am. Compl.") at ECF 11). The grievance was denied. The denial of the grievance stated plaintiff's mask was confiscated "[i]n accordance with Direction issued by" Commissioner Annucci that "inmates may utilize a state issued handkerchief as a face covering." (Id.). Plaintiff appealed the grievance; the outcome of plaintiff's appeal remains unclear.

Plaintiff alleges he tested positive for COVID-19 on July 19, 2020. He further alleges that soon afterwards, Green Haven mandated all inmates wear face masks like the one confiscated from him.

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). The burden to proffer evidence admissible pursuant to the Federal Rules of Evidence applies "equally to pro se litigants." Varughese v. Mt. Sinai Med. Ctr., 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)). Bald assertions, unsupported by admissible evidence, are thus not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment and read his submissions "to raise the strongest arguments that they suggest," such solicitude "does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

II.   Eighth Amendment Claim

Defendants argue plaintiff has failed to raise a triable issue of fact that (i) Commissioner Annucci was personally involved in the alleged constitutional violation, (ii) confiscating plaintiff's face mask exposed him to conditions that posed an unreasonable risk of serious damage to his health, (iii) any defendant acted with the requisite mens rea, or (iv) defendants' actions caused his July 2020 COVID-19 infection. Defendants also argue plaintiff has not proven he suffered an injury sufficient to support his Eighth Amendment claim.

The Court agrees plaintiff has failed to raise a genuine issue of material fact regarding whether any defendant acted with the requisite mens rea. Accordingly, the Court does not address defendants' remaining arguments.

A.     Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to protect a prison inmate's right to "conditions of confinement" that are "at least humane." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001).  "In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." Id. at 164.

Thus, deliberate indifference claims under the Eighth Amendment include an objective component and a subjective component.  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).  To establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017).  To establish the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety.  See Hathaway v. Coughlin, 37 F.3d at 66.

Regarding COVID in particular, "[i]t is well settled that correctional officials have an affirmative obligation to protect inmates from infectious disease." Prendergast v. Brann, 2022 WL 18542154, at **4–5 (S.D.N.Y. Dec. 15, 2022), report and recommendation adopted, 2023

7

WL 1438728 (S.D.N.Y. Feb. 1, 2023) (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)).  And "it is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death."  Id.; see also Fernandez-Rodriguez v. Licon-Vitale, 470 F. Supp. 3d 323, 349 (S.D.N.Y. 2020) ("Put simply, COVID-19 stands with the roster of infectious diseases from which correctional officials have an affirmative obligation to protect inmates.").

Courts have thus found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus."  Chunn v. Edge, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020).  Therefore, with respect to the objective prong, "the relevant inquiry" for a plaintiff asserting an Eighth Amendment claim based on risk of COVID-19 infection is whether the plaintiff has "shown a substantial risk of serious harm from COVID-19 . . . in light of the countermeasures that the facility has in place."  Id. at 201.

With respect to the subjective prong, "courts within this circuit have consistently held that prison officials did not disregard a substantial risk to inmate health and safety by implementing measures in accordance with CDC guidelines."  Gibson v. Rodriguez, 2021 WL 4690701, at *6 (D. Conn. Oct. 7, 2021).

B.     Analysis

Here, the Court need not decide whether there is a genuine issue of material fact as to the objective prong of plaintiff's Eighth Amendment claim—or address the other arguments raised by defendants related to causation or injury—because plaintiff cannot satisfy the mens rea prong of his Eighth Amendment claim.  On that basis alone, the claim must be dismissed.

Even assuming defendants were aware of the risks of COVID-19 by April 2020, there is nothing in the record suggesting Commissioner Annucci, Sgt. Rossy, or Sgt. Mazella "intentionally . . . impose[d] the alleged condition[s], or recklessly failed to act with reasonable care to mitigate the risk that the condition[s] posed" to plaintiff.  See Caraballo v. Dep't of Corr. N.Y., 2022 WL 16555313, at *5 (S.D.N.Y. Oct. 31, 2022).  To the contrary, defendants adduced significant evidence of countermeasures DOCCS put in place to minimize the risk of COVID-19 to inmates.

While perhaps it did not cover every possible safety mechanism, Commissioner Annucci's memorandum regarding masks was a reasonable response to prevent the spread of COVID-19, as it was purportedly informed by the most recent CDC and DOH guidance available.  Thus, even if certain aspects of Annucci's "response to COVID-19 [were] imperfect, or negligent, [that] is not enough to support a finding of deliberate indifference."  Jones v. Westchester Cnty., 2022 WL 1406591, at **4–5 (S.D.N.Y. May 4, 2022) (dismissing Section 1983 claims alleging failure by jail officials to prevent the spread of COVID-19); see also Gibson v. Rodriguez, 2021 WL 4690701, at *7 (granting summary judgment to defendants on claim that they were deliberately indifferent to risks posed by COVID-19 in view of reasonable countermeasures)

And even if Sgt. Rossy and Sgt. Mazella failed to follow the policies actually in place at Green Haven at that time, as plaintiff claims, plaintiff has not presented evidence that Commissioner Annucci was aware the preventative measures he put in place were not being followed.  See Fernandez-Rodriguez v. Licon-Vitale, 470 F. Supp. 3d 323, 352 (S.D.N.Y. 2020) (in denying motion for preliminary injunction, concluding prison officials knew the risk COVID-

9

19 posed in prisons but did not disregard those risks when they took reasonable measures to abate the risk to inmates).

Likewise, plaintiff does not present any evidence that Sgt. Rossy and Sgt. Mazella intentionally or recklessly disregarded a serious risk to plaintiff's health. Indeed, the record suggests both Sgt. Rossy and Sgt. Mazella believed they were required to confiscate the mask under the prevailing policy, and plaintiff offers nothing to dispute that.

Finally, there is no evidence to suggest Sgt. Rossy or Sgt. Mazella knew plaintiff had underlying health conditions that made him more vulnerable to COVID-19 and disregarded that risk in confiscating his face mask. Plaintiff contends he has asthma but does not claim that he told Sgt. Rossy or Sgt. Mazella about his asthma when they confiscated his face mask, and the record indicates they were not aware plaintiff had any pre-existing condition at that time.[4] Plaintiff also claims he did not have the cloth handkerchief referred to in DOCCS policy to wear in place of his surgical face mask. (Counter Statement to Defs.' 56.1 Statement ¶ 37). But he stated during his deposition that he did have the cloth handkerchiefs in his cell (Burns Decl., Ex. F at 61–62); regardless, he has not claimed he informed Sgt. Rossy or Sgt. Mazella that he did not have access to his cloth handkerchiefs. Finally, plaintiff contends Sgt. Rossy and Sgt. Mazella were aware he was over fifty years old at the time they confiscated his face mask, and therefore disregarded the increased risks to him of COVID-19 because of his age. However, he has not proffered any evidence that these defendants knew about the increased risk of infection to persons aged fifty and over at the time they confiscated plaintiff's face mask, in April 2020, when the COVID-19 pandemic was in its earliest stages.

---

[4] In fact, based on the record, plaintiff seems to have raised his asthma claim for the first time in opposition to this motion.

Thus, plaintiff has failed to raise a triable issue that Sgt. Rossy or Sgt. Mazella knew of or recklessly disregarded a serious risk of harm to plaintiff by confiscating his face mask.

Accordingly, summary judgment must be granted to defendants on plaintiff's Eighth Amendment claim.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #69) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions to plaintiff at the address on the docket.

Dated:  October 13, 2023
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge